# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MOTIVA ENTERPRISES LLC | CIVIL ACTION NO. |
| VERSUS | JUDGE: |
| MAPP CONSTRUCTION, LLC | MAGISTRATE: |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Motiva Enterprises LLC, a foreign limited liability company, whose domicile is located in Wilmington, Delaware, and principal business office in Houston, Texas, and who respectfully represents as follows:

## NATURE OF THE ACTION

1.

Plaintiff, Motiva Enterprises LLC, brings this Complaint to recover damages which were directly and proximately caused by the defendant's, MAPP Construction, LLC, breach of its construction contract with the plaintiff and its negligence.

## JURISDICTION AND VENUE

2.

This Honorable Court has subject matter jurisdiction over the claims in this action because the matter in controversy exceeds the sum of Seventy-Five Thousand and 00/100 ($75,000.00) Dollars, exclusive of interest and costs. Further, Motiva Enterprises LLC and MAPP Construction, LLC are

domiciled in Wilmington, Delaware, and Baton Rouge, Louisiana, respectively.

3.

Motiva Enterprises LLC is comprised of SRI (Saudi Refining, Inc.), TMR Company and SOPC Holdings East, LLC (SOPC East). Additionally, SOPC Holdings East, LLC is comprised of Shell Oil Company and SOPC Holdings West LLC; SOPC Holdings West LLC is comprised of Shell Oil Company and Shell Oil Products Company LLC; Shell Oil Products Company LLC is comprised of Shell Oil Company. These are all corporations or limited liability companies domiciled in Delaware with primary addresses in Houston, TX.

4.

Therefore, this Honorable Court has jurisdiction over this matter based on diversity of citizenship. 28 U.S.C.A. § 1332.

5.

Venue is proper in the Middle District of Louisiana because the events or omissions giving rise to this Complaint occurred in the Middle District of Louisiana. Additionally, the property that is the subject of this Complaint is situated in the Middle District of Louisiana. 28 U.S.C.A. § 1391(a).

**DEFENDANT**

6.

Made Defendant herein:

(1) **MAPP CONSTRUCTION, LLC** ("MAPP"), a domestic limited liability company authorized to do and doing business in the State of Louisiana, whose domicile address is 344 Third Street, Baton

-2-

Rouge, LA 70801.

The above named defendant is responsible and liable to petitioner because of the following:

## BACKGROUND AND ALLEGATIONS
## COUNT 1-BREACH OF CONTRACT

7.

Motiva Enterprises LLC (hereinafter referred to as "Motiva") is engaged in the oil products refining and marketing business. Motiva manufactures refined petroleum products, including gasoline, various fuels and lubricant based oils. The company owns and operates three refineries, including the subject refinery located in Covent, Louisiana.

8.

On or about October 1, 2005, Motiva entered into a written agreement with Jacobs Field Services North America Inc.(hereinafter referred to as "Jacobs") for engineering, procurement and construction management services. Pursuant to that contract, Jacobs was authorized to procure contracts on Motiva's behalf for a project known as the "Motiva Convent Control Room Building." For various reasons and as a result of new industry regulations, Motiva was required to construct a new Control Room building for the Convent Refinery located in Convent, Louisiana.

9.

Accordingly, on or about December 1, 2008, MAPP entered into a contract with Motiva, through Motiva's agent, Jacobs, for construction of the Control Room building at the Motiva Convent Refinery.

The Motiva Control Room building will house highly sensitive and expensive equipment and technology which will control and be vital for the safe operation of the various processing units at the Motiva refinery. The proper construction of this essential building is paramount, and it must be free and clear of any defect and/or deficiencies in order to perform its vital mission to safely control all of the complex refining processes.

10.

Pursuant to the contract, MAPP was the general contractor on the project. Also pursuant to the contract, MAPP was to select and be responsible for the subcontractors to complete the project:

**B.** **MAPP Construction, LLC (Contractor) shall:**

(i) Be responsible for providing the services of all necessary personnel required to perform General Contracting for Control building at the Motiva Covent Refinery as specified in "Scope of Work" of the attached CONTRACT documents(s);

(ii) Furnish the services of qualified management and construction personnel necessary to control construction of the Work;

(iii) Procure equipment, materials and subcontracts in accordance with the scope of the project as per the engineering drawings. Specifications and project execution plan for this project and per the specific requirements of the approved for this work;

(iv) Assist Motiva ("BUYER") in obtaining all permits and licenses to be taken out in the name of BUYER as necessary in the completion of the Work or the operation of the Facility; and

(v) Appoint one (1), or more, individual(s) who shall be authorized to act on behalf of Contractor and with whom BUYER may consult at all reasonable times, and whose instructions, requests, and decisions will be binding upon Contractor as to all matters pertaining to the Work and the performance of the parties hereunder.(See copy of Motiva/Jacobs/MAPP contract, attached hereto as Exhibit "A").

11.

According to provision 5(a) of the Motiva/Jacobs/MAPP contract, entitled "Responsibilities of Contractor", MAPP would solely be responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under this Contract:

> In the performance of this contract, Contractor [MAPP] shall operate as an independent contractor and not as an agent of Contractor. Contractor shall supervise and direct its work using contractor's best skill and attention. Contractor shall solely be responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under this Contract. Contractor shall be responsible for jobsite safety and for the acts and omissions (whether on or off the project site) of its employees, subcontractors and their agents and employees performing portions of the work for or on behalf of Contractor. Subcontract work shall be performed in a thorough, sound, workmanlike, safe and substantial manner. All construction equipment shall be in first-class operating condition, safe, fit for uses for which intended, and suitable for the safe and efficient performance of the Work. Contractor agrees to perform the Work and to provide construction equipment to the satisfaction and approval of Agent. (See copy of Motiva/Jacobs/MAPP contract, attached hereto as Exhibit "A").

12.

According to provision 7(a) of the Motiva/Jacobs/MAPP contract, entitled "Warranty", MAPP warranted that its work would be free from defects:

> Contractor warrants that all equipment and materials furnished or installed by Contractor will be new and free from defects (latent or otherwise) in material, workmanship, installation, or design furnishes, and fit for the purpose intended, that the work will be free from Defects and fit for the purpose intended, and that the work will conform with the requirements of the Contract documents, for a period of no less than 12 months following final acceptance by Agent [Jacobs] and Buyer [Motiva] or such

longer period as may be prescribed in the Contract documents. Contractor agrees, at its own costs, to repair or replace any equipment, material, workmanship or design furnished which shall have proved defective within the warranty period and to be responsible and hold Agent harmless for any and all damages caused by such defective Work. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents. Work not conforming to the requirements of the Contract Documents, including substitutions not properly approved and authorized, may be considered defective. (See copy of Motiva/Jacobs/MAPP contract, attached hereto as Exhibit "A").

13.

Construction of the Control Room building began on or about November 14, 2008.

14.

During construction of the building by MAPP, on or about December 8, 2009, and after supposed completion of the building walls and cladding system, water was discovered penetrating or migrating through to the interior of the Control Room building.

15.

After various meetings with representatives of MAPP, Jacobs, Motiva and, the architect, Smith LaRock Architecture P.C. (hereinafter referred to as "SLA"), SLA prepared a report, dated January 6, 2010, to address the construction deficiencies entitled, "Findings and Recommendations." This report noted numerous defects and deficiencies with the cladding system relative to the CMU walls, mortar, flashing, weep system, sealing, vapor barrier, and overall building and cladding system construction. These construction defects and deficiencies created water penetration problems and insulation deficiencies.

16.

Specifically, the SLA report found water was infiltrating the Control Building Room in the following locations at the time:

1) various areas along the interior portion of the floor slab at wall construction that was deemed complete;

2) various areas along curtain wall and translucent sandwich panel assemblies (Kalwall) construction that was deemed to be incomplete due to the finished sealant not yet installed;

3) the upper portion of the CMU walls from column lines B-D, along both 2 and 5; along column line 5, being the worse of the two. (See copy of SLA's "Findings and Recommendations," attached hereto as Exhibit "B").

17.

After a review of SLA's findings and recommendations, representatives from Motiva, Jacobs, MAPP and SLA met, on or about January 27, 2010, to address the construction deficiencies directly or indirectly causing water penetration.

18.

Unfortunately, due to the nature of the problems and deficiencies discovered, and serious concerns about the quality of the wall construction as a whole, only an extensive demolition effort and reconstruction of the weep wall system would ensure a satisfactory result.

19.

Therefore, to address the above construction issues relative to the cladding system, and other construction/locations, SLA issued a Retrofit to correct and address the construction deficiencies,

-7-

directly and indirectly causing water penetration related problems. On February 10, 2010, SLA issued its Retrofit Report and subsequently amended its report on February 17, 2010. (See copy of SLA's Retrofit report and amendment, attached hereto as Exhibit "C").

20.

The corrective demolition phase began immediately, but MAPP initially refused to do the retrofit work. Jacobs issued a March 1, 2010 letter to MAPP directing MAPP to reconstruct the building in accordance with the Retrofit.

21.

The Retrofit was further complicated by the discovery of mold and mildew on the Control Room building drywall on or about March 1, 2010. Work again was delayed on March 25, 2010 when Jacobs observed that MAPP had installed certain vapor barriers prior to final inspection, effectively covering the wall construction and preventing inspection. Jacobs provided formal confirmation that MAPP had cured the breach on April 14, 2010.

22.

During the course of the retrofit and reconstruction efforts, Jacobs observed an alarming number of construction deficiencies not originally identified in SLA's initial report. A formal NCR(non-conforming report) was issued for each significant construction defect. A summary of those additional construction deficiencies that relate to the water penetration problems include improper installation of EPDM lap joints, end dams, EPDM installation at windows, failure to seal EPDM penetrations, improperly sealed joints, mortar issues, sidewalk elevation issues, other cladding system, insulation

-8-

Case 3:10-cv-00819-JJB-CN   Document 1   12/07/10   Page 8 of 15

and construction deficiencies. As a result of the above and other construction deficiencies, Jacobs has issued a total of some 43 NCRs.

23.

Most notably, NCR-27, issued on June 22, 2010, cites to the mortar joints in the CMU wall as being a significant source of water intrusion, due to the improper and overall lack of quality in the mortar construction. This particular NCR remains open as remediation and corrective efforts are being performed. Due to this ongoing effort and NCR, as well as other noted problems and NCRs, SLA has stated that substantial completion of the project has not been reached at this time. The Control Room building remains under construction and repair.

24.

As a result, substantial and lengthy delays and remediation/repairs have been incurred by Motiva, resulting in increased costs and overhead.

25.

Because of the above-cited construction deficiencies and issues with the Control Room building, MAPP has breached the contract to construct the Control Room building in the following, non-exclusive, respects:

(1) by its defective workmanship;

(2) by its failure to exercise the requisite skill to construct the Control Room Building; and

(3) by its failure to construct the Control Room Building in a good, workmanlike manner and free from defects in material and workmanship.

26.

Because of MAPP's breach of contract, MAPP is liable to Motiva for all damages arising from such breach including, but not limited to the following:

(1) costs for completing;

(2) all remediation/repairs and their cost;

(3) increased overhead and/or costs;

(4) all delays; and

(5) lost work time.

27.

As of this filing, Motiva's damages and costs due to MAPP's fault and breach of contract exceeds $3.3 million dollars. As the work is still ongoing, Motiva fully expects this amount and damages to increase.

**COUNT II-NEGLIGENCE**

28.

For Count II of its Complaint, Motiva adopts and incorporates by reference each of the factual allegations set above in this Complaint.

29.

Additionally, MAPP owed Motiva a legal duty of good workmanship and ordinary care in the construction of the Control Room building.

-10-

30.

MAPP has breached its duty to Motiva by its defective workmanship as well as its failure to exercise ordinary care in construction of the Control Room building, as evidenced by the construction deficiencies and NCRs relative to the Control Room building.

31.

MAPP's negligence and breach of duties is the direct and proximate cause of damages to Motiva in that MAPP's construction errors and omissions have caused and continue to cause damage to the Control Room Building and underlying portions of the work preformed to construct the control room.

32.

As such, MAPP is liable to Motiva for all damages arising from and due to its negligence and breach of duties.

33.

Furthermore, due to the pervasive water intrusion issues and other NCRs, which continue to be addressed, particularly with regard to NCR-27, MAPP has delayed the project as well as substantial completion. Because the building is still under construction and repair, and substantial completion has not been reached. Motiva further asserts that additional deficiencies and ongoing concerns may exist for which MAPP will be responsible for and liable to Motiva for their breach of contract and negligence.

## COUNT III-INDEMNIFICATION

34.

Section 14, of the contract entered into by MAPP and Jacobs, as agent for Motiva, entitled Liability and Indemnification, states:

14. <u>LIABILITY AND INDEMNIFICATION</u>

A. CONTRACTOR **[MAPP]** SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS BUYER **[MOTIVA]**, OTHER BUYER COMPANIES, CONSTRUCTION MANAGERS AND AGENT **[JACOBS]** FROM AND AGAINST ALL CLAIMS, LOSSES, DAMAGES, COSTS (INCLUDING LEGAL COSTS), EXPENSES AND LIABILITIES IN RESPECT OF:

DIRECT PHYSICAL LOSS OR DAMAGE TO THE PROPERTY OF CONTRACTOR OR ANY OTHER CONTRACTOR COMPANY OR ANY DIRECTOR, OFFICERS, EMPLOYEES OR AGENTS OF CONTRACTOR COMPANIES ("CONTRACTOR'S REPRESENTATIVES) WHETHER OWNED, HIRED, LEASED OR OTHERWISE PROVIDED BY CONTRACTOR OR CONTRACTOR'S REPRESENTATIVES ARISING FROM OR RELATING TO THE PERFORMANCE OF THE CONTRACT: AND PERSONAL INJURY AND BODILY INJURY, INCLUDING DEATH OR DISEASE TO ANY PERSON EMPLOYED BY CONTRACTOR OR CONTRACTOR'S REPRESENTATIVENESS ARISING FROM OR RELATING TO THE PERFORMANCE OF THE CONTRACT, EVEN IF ANY SUCH INJURY, LOSS OR DAMAGE ARISES OUT OF ANY NEGLIGENCE, ACT OR OMISSION OF BUYER OR ANY OTHER BUYER COMPANY OR AGENT IN PERFORMANCE OF THE CONTRACT.

********************

NOTWITHSTANDING CLAUSE 14.1.2.1 ABOVE, CONTRACTOR SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS BUYER AND OTHER BUYER COMPANIES FROM AND AGAINST ALL CLAIMS, LOSSES, DAMAGES, COSTS (INCLUDING LEGAL COSTS), EXPENSES AND LIABILITIES IN RESPECT OF ALL MATERIALS, GOODS, AND EQUIPMENT, FACILITIES OR UNITS FOR WHICH CONTRACTOR IS PROVIDING SERVICES HEREUNDER, "WORK IN PROGRESS" UNTIL FINAL COMPLETION OF THE WORK IN PROGRESS, EVEN IF SUCH INJURY, LOSS OR DAMAGE ARISES OUT OF ANY

NEGLIGENCE, A CT OR OMISSION OF BUYER OR ANY OTHER BUYER COMPANY IN PERFORMANCE OF THE CONTRACT. CONTRACTOR'S RESPONSIBILITY FOR LOSS OR DAMAGE UNDER THIS CLAUSE SHALL BE LIMITED TO $100,000 PER ANY ONE OCCURRENCE.

35.

As a result of the construction deficiencies, delays and further failure of MAPP to pay its subcontractors, Motiva, as owner of the property/building, has had to defend certain claims and lien claims by certain subcontractors. Under the above cited contractual language, MAPP is required to defend and indemnify Motiva from such claims. Accordingly, Motiva seeks from MAPP all attorney's fees and costs associated with the defense of any claim brought by the subcontractors for MAPP.

36.

Plaintiff requests a trial by jury of all issues triable by jury herein.

WHEREFORE, plaintiff, Motiva Enterprises LLC, prays as follows:

(1) That defendant, MAPP Construction, LLC, be duly served and cite to appear and answer this Complaint;

(2) That after the lapse of all legal delays and after due proceedings are had, there be judgment rendered in favor of Motiva Enterprises LLC and against MAPP Construction LLC for: (a) damages incurred by Motiva because of MAPP's breach of contract, including but not limited to, remediation/repairs and their cost, increased overheard and/or cost for completing the project, delays and lost work time; (b) MAPP's negligence and, in particular, its breaching of its legal duties of good workmanship and ordinary care in the construction of the Control Room Building; and (c)

-13-

attorney's fees and costs associated with defending the claims by MAPP's subcontractors, together with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings.

AND FOR ALL GENERAL AND EQUITABLE RELIEF.

AND THAT ALL EXPERT WITNESS FEES BE TAXED AS COSTS OF COURT.

Respectfully submitted:

/s/ José R. Cot

**TIMOTHY P. HURLEY, T.A. (LSBA #1976)**
**JOSÉ R. COT (LSBA #18852)**
**DANIEL R. ESTRADA (LSBA#26632)**
**MAGINNIS & HURLEY APLC**
One Canal Place
365 Canal Street, Suite 2750
New Orleans, Louisiana 70130
Telephone: (504) 524-5353
Telefax: (504) 524-5403
**ATTORNEYS FOR PLAINTIFF,**
**MOTIVA ENTERPRISES LLC**

**PLEASE SERVE:**

**MAPP CONSTRUCTION, LLC,**
**through their agent for service of process,**
**R. Gray Sexton, Esq.**
**8675 Bluebonnet Blvd., Suite C**
**Baton Rouge, LA 70801**